

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 19, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROXWELL PERFORMANCE DRILLING, LLC, | § § § | CASE NO. 13-50301-RLJ-11 |
| | § | |
| DEBTOR. | § | |

### MEMORANDUM OPINION

On April 17, 2014, hearing was held on the following styled motion: *Trustee's Emergency Motion for Turnover of the Debtor's Property and Motion for Sanctions and Damages for Willful Violation of 11 U.S.C. § 362(a)* [Docket Nos. 300 and 302]. By the motion, Harrel L. Davis, III, the chapter 11 trustee, asked the Court to direct two individuals, Roger Muniz, a former president of the debtor, and Carlos Baeza, a former employee of the debtor, who is also associated with Muniz, to turnover property of the debtor, including certain items removed from the debtor's premises on April 1, 2014, and to award actual and punitive damages against Muniz and Baeza for willfully violating the automatic stay.

Pending its ruling on the motion, the Court issued its order enjoining Muniz and anyone associated with him, including Baeza, from entering the debtor's premises and from taking possession of any of the debtor's property or any other property located on the debtor's premises. *See* Docket No. 317.

The Court has jurisdiction over the issues raised here under 11 U.S.C. §§ 1334(b) and 157(a) and (b); this is a core proceeding under § 157(b)(2)(A), (E). The following constitutes the Court's findings of fact and conclusions of law issued in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

I.

This case was filed under chapter 11 of the Bankruptcy Code on November 1, 2013. The decision to file this bankruptcy case was made by a state court receiver, Fernando Bustos, appointed as receiver over the assets and operations of Roxwell Performance Drilling, LLC ("Roxwell") under a receivership order entered by the 238th District Court for Midland County, Texas. The receivership order provided that Bustos as receiver was authorized to file a petition under the bankruptcy laws on behalf of Roxwell. By this Court's Memorandum Opinion and Order of December 20, 2013 [Docket No. 83], the Court, upon a motion made by the United States Trustee, directed the appointment of a chapter 11 trustee. Harrel L. Davis, III was appointed as the chapter 11 trustee on December 26, 2013, and was thus charged to perform the duties of a trustee in accordance with § 1106 of the Bankruptcy Code.

A.

Scott Allen, the former Chief Financial Officer of Roxwell, testified. Allen continued to work with Bustos during the receivership and then with Davis upon his appointment. He stated

that Keith Martin, the former Chief Operating Officer of Roxwell, also continued to assist Bustos with the receivership and the trustee upon his appointment.

Allen periodically checked on the Roxwell facilities. He testified that on April 1, 2014, he drove by Roxwell at approximately 9:00 A.M. He saw a gray Ford Super Duty pickup at the facility. The pickup matched the pickup that Muniz regularly drives. It had a cattle guard on the front as does Muniz's. He testified that he was sure the pickup was Muniz's as he had seen Muniz drive an identical pickup on several occasions. He therefore inferred that Muniz was driving the pickup. He was not close enough to identify the driver, however.

In addition to seeing (and photographing) the pickup (*see* Trustee's Exhibit K), Allen saw Baeza driving a forklift outside one of the buildings. The forklift had been stored in the Roxwell storage shop. He testified that he was close enough to identify Baeza. Baeza, according to Allen, was startled to see Allen and apparently returned the forklift to the storage shop. Allen's testimony regarding the events on April 1 was not seamless; he did not testify to an uninterrupted chain of events during which he saw Baeza return the forklift to the Roxwell storage facility and then leave after doing so. But he did testify that after Baeza had left (as did the pickup with its driver), he entered the building and could detect the odor of exhaust fumes from the forklift. He also identified the following items as missing from the facility: a Millermatic 250 Welder; a set of 6" callipers; a flat screen TV; two leather office chairs; a set of yellow high back chairs; two printers; a hole-punch; and a framed map of the State of Texas.

Muniz also testified. He admitted that he owns and drives a gray Ford Super Duty pickup with a cattle guard on the front, one that matches the one in the photograph taken by Allen on April 1, 2014. He denied he was at the Roxwell facility on April 1, however. He said he drove to

San Antonio in the pickup on that day and, in light of the distances he traveled that day, it would have been impossible for him to have been at Roxwell. He testified that he had lunch in San Antonio with an individual named George Amaya, a broker. He also testified that Baeza was working for him in New Mexico on that day.

Muniz said that he kept no receipts from his travels on April 1, either for gas purchases or lunch with Mr. Amaya. He admitted that he used a credit card on that day.

Muniz, during direct examination by his counsel, Mr. Moster, testified vaguely about how he had developed intellectual property for Roxwell that had been stolen by, presumably, Martin and Allen. He said that Martin and Allen had "undermined" Roxwell's business; he also referred to the disputed ownership of Roxwell—he claimed to own at least 75% of Roxwell.

Muniz tried to refute Allen's testimony that he saw Muniz's pickup at the Roxwell site on April 1. Muniz's testimony was essentially inferences that he conveniently drew from the undisputed facts. He said the attempt to link him with the incident on April 1 was based on evidence that was purely circumstantial as he, Muniz, was not specifically identified; he also noted that the photograph of his pickup was not date-stamped. With respect to any missing property, he resorted to claiming that much of the property located on the Roxwell premises actually belonged to him rather than Roxwell. Muniz offered no corroborating evidence or supporting testimony from any other witness concerning his whereabouts on April 1, 2014.

Bustos, the receiver, testified, as well. He testified that after his appointment as receiver, sometime in the fall of 2013, he discovered that much of Roxwell's inventory was missing. Martin told him, for example, that Roxwell's Beeville yard had been "cleaned out." During a meeting that Bustos had with Muniz, Muniz told Bustos that he had "others" take property from the Beeville

yard; he asserted that the property was his. This was done after a temporary restraining order had been issued in connection with the state court receivership enjoining removal of any property from Roxwell's premises. When confronted with this, Muniz told Bustos that he had no notice of the restraining order.

During the receivership, Martin, according to Bustos, received an expletive-laced message from Muniz asserting, in effect, that the property located at Roxwell's facilities was his (Muniz's). *See* Trustee's Exhibit F.

Bustos had to send multiple letters to Muniz's attorneys, Kelly Hart, insisting that Muniz "cease and desist" from various activities and conduct that interfered with Roxwell's property and operations.

B.

On April 11, 2014, Muniz followed Allen to a golf course and videoed Allen, Allen's wife, and others as they prepared to play a round of golf. He then sent a copy of the video to Todd Johnston, counsel for the trustee, with a message that said,

> I made [this video] this morning of your illegal management playing golf today with their wives. Has there been an attempt to reorganize? Obviously your management is running their own company with my equipment and Mr. Davis seems oblivious to his duties and responsibilities. The willful misconduct and gross negligence from the Trustees has caused imminent and irreparable harm to RoxWell. I am the largest creditor and shareholder of RoxWell, as such, I suggest we have a discussion with your client and myself and Mr. Moster ASAP. I will be glad to bring more video evidence I have gathered in regards to your illegal management running their own company on my dime. I had a meeting with the FBI this morning and another scheduled with the station commander on Monday morning. The small amount of evidence I have been able to provide them they seem to believe there are possible bankruptcy fraud and other more serious allegations they are interested in investigating. The Special Agent I spoke with was upset with all the facts I was able to provide from emails, letters, the company agreement, etc. He was appalled the Trustee has done nothing about this evidence nor that the receiver nor court appointed Trustee hasn't given me the opportunity to present it.

Trustee's Exhibit J.

Prior to the bankruptcy, but after the receivership was established, Allen found a handwritten note from "RM Leasing" to "Keith Martin, Scott Allen" posted on the gate to Roxwell's machine shop building. The handwritten note said,

> WE STOPPED BY TO COLLECT.
> Do Not Enter or be subject to Criminal Prosecution.
> Have Mr. Bustos contact the law office of Kelly Hart & Hallman. We request that we take 100% percent [*sic*] inventory today in accordance with your lease agreement copies of all financial statements, access to all properties must be provided today—10/23/13. Please read the non-contravene clause in your agreement as to any thought of violation of a T1 can be dispelled.
> Thanks RM Leasing Mgmt
> Call (432) 664-7093 to have a sheriff and the owner meet you here.

Trustee's Exhibit E. Kelly Hart & Hallman, LLP represented Muniz initially in this bankruptcy proceeding and obviously was representing Muniz at the time this note was left at Roxwell.[1] Muniz admitted that he left the note with Allen for the purpose of having the inventory turned over to RM Leasing, apparently taking the position that the majority of the equipment located at Roxwell was his and was titled in his name individually (RM Leasing apparently was a sole proprietorship operated by Muniz).

C.

The Court finds that the testimony of both Allen and Bustos was credible; it was supported by other corroborating evidence. The testimony of Muniz, however, was self-serving, lacked candor, and, as to specific disputed factual issues, was not credible. His conduct in connection with this case and the prior receivership has been disruptive and erratic.

---

[1]The Kelly Hart firm withdrew from representing Muniz. The Court notes that the Moster Law Firm also withdrew from representing Muniz after the hearing here.

The Court is convinced that Muniz caused the removal of certain items from Roxwell's premises on April 1, 2014, including the following listed items: a Millermatic 250 Welder; a set of 6" callipers; a flat screen TV; two leather office chairs; a set of yellow high back chairs; two printers; a hole-punch; and a framed map of the State of Texas. Regardless whether any one item may constitute Muniz's property, his removal of any items of property totally undermines the trustee's efforts to administer the estate's assets. Muniz wrongfully entered Roxwell's premises and removed the items of personal property.

## II.

The Court may issue any appropriate order, directed to Muniz and, if necessary, Baeza, to ensure that the provisions of the Bankruptcy Code are properly carried out. *See* 11 U.S.C. § 105; *see also In re Paige*, 365 B.R. 632 (Bankr. N.D. Tex. 2007). The Court's authority under § 105 comports with the Court's inherent power to sanction. *Id*. at 637. Muniz's conduct constituted bad faith and justifies the Court's use of its power to sanction. His conduct also violated the automatic stay under § 362 of the Bankruptcy Code imposed upon Roxwell's bankruptcy filing. As noted, the trustee seeks actual and punitive damages under § 362(k) of the Code. Such provision provides that "an individual injured by any willful violation of [the] stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). As Roxwell is not an individual, it may not recover damages under § 362(k). *See In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003). The Court may, however, award damages to a corporate debtor in enforcement of the Court's civil contempt power or pursuant to its equitable powers under § 105 of the Bankruptcy Code. *Id.*

> An award of damages in favor of a corporate debtor may provide an incentive for debtors to prosecute violations of the stay and for creditors to observe the limits imposed by the automatic stay. Similarly, civil contempt as a sanction may serve to insure compliance with the automatic stay or to compensate a debtor for losses or damages sustained because of a stay violation.
>
> The Fifth Circuit has recognized that a major purpose of civil contempt is to compensate a party for damages sustained as the result of a violation of a court order or injunction. The automatic stay is a self-executing injunction, and therefore, for contempt purposes, constitutes an order issuing from the bankruptcy court.

*Id.* (internal citations omitted). This Court has previously looked to the willfulness standard under § 362 for guidance in determining whether to award damages under the Court's equitable or contempt powers. Willfulness within the context of an alleged stay violation is defined to mean intentional acts committed with knowledge of the bankruptcy filing. *Id.* at 124–25. Muniz's conduct certainly satisfies the willfulness standard.

The most immediate concern here is the return of all property removed from Roxwell's premises. The Court will therefore issue an interim order as a means to effect the return of all property by Muniz and Baeza that they previously removed or had removed from Roxwell's premises. Upon return of all such property, the Court will, upon the facts as here stated (and, if recovery, other facts in the record), as well as the Court's authority as outlined above, assess whether damages, including punitive damages, and other sanctions shall issue. (Muniz's compliance with this order will be considered by the Court in assessing damages and sanctions.)

At the hearing, the trustee, Davis, through counsel, expanded on the relief he requested by the motion. The trustee asked that the Court expunge the proofs of claim filed by Muniz and to direct the turnover of other personal property that is subject of other proceedings before the Court. Muniz, through counsel, objected to the Court's consideration of these additional forms of relief.

The Court denies such additional relief, but does so without prejudice to the trustee reurging in another proceeding.

### End of Memorandum Opinion ###